No. 113,928

In the Matter of ELIZABETH ANNE HUEBEN, *Respondent*.

(362 P.3d 809)

Opinion filed October 30, 2015.

*Michael R. Serra*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was on the formal complaint for the petitioner.

*Amy E. Elliott*, of Law Office of Amy E. Elliott, of Overland Park, argued the cause, and *Elizabeth Anne Hueben*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Elizabeth Anne Hueben, of Kansas City, Missouri, an attorney admitted to the practice of law in Kansas in 2004.

On February 11, 2015, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on March 9, 2015. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on April 14, 2015, where the respondent was personally present and was represented by counsel. The hearing panel determined that respondent violated Supreme Court Rule 203(c)(1) (2014 Kan. Ct. R. Annot. 306) (automatic temporary suspension of attorneys convicted of a felony crime) and KRPC 8.4(b) (2014 Kan. Ct. R. Annot. 680) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

*"Findings of Fact*

. . . .

"7.   The Kansas Supreme Court admitted the respondent to the practice of law in the State of Kansas on April 30, 2004. On October 6, 2009, the Kansas Supreme Court entered an order suspending the respondent's license to practice law for failing to pay the annual continuing legal education fees. Then, on August 5, 2014, the Kansas Supreme Court entered an order of temporary suspension due to the felony conviction described in paragraph 12, below.

"8.   In September, 2003, the Missouri Supreme Court admitted the respondent to practice law in Missouri. On February 6, 2012, the respondent transferred her license to practice law in Missouri to inactive status.

"9.   Following admission to the bar, the respondent briefly entered private practice with a firm in Missouri but soon left that firm and joined the Missouri public defenders' office. She continued with the Missouri public defenders' office until her transfer to inactive status. She has never practiced in Kansas.

"10.   Prior to her admission to the practice of law, and as reported in her Kansas bar application, in 1991, respondent was arrested for driving under the influence of alcohol in Overland Park, Kansas. For the charge of driving under the influence of alcohol, the respondent participated in a diversion program.

"11.   On July 2, 2010, the respondent was arrested in Jackson County, Missouri, for driving while under the influence of alcohol, a misdemeanor, and possession of cocaine, a felony. The respondent received a suspended imposition of sentence for the driving while under the influence of alcohol charge. Regarding the possession of cocaine charge, the respondent entered into an agreement with the prosecutor. The prosecutor agreed to dismiss the charge if the respondent complied with certain conditions. By the respondent's conduct set forth in paragraph 11 below, the respondent violated the agreement with the prosecutor. Accordingly, the prosecutor terminated the agreement. Thereafter, in February 2012, the respondent entered the Missouri Drug Court Diversion Program. The respondent successfully completed the diversion program and, thereafter, on March 28, 2013, the possession of cocaine charge was dismissed.

"12.   On February 20, 2011, the respondent was arrested in Johnson County, Kansas, for driving under the influence of alcohol (third offense), in violation of K.S.A. 8-1567(a)(3), an unclassified felony and refusal of a preliminary breath test, in violation of K.S.A. 8-1012, a traffic infraction. On January 3, 2013, the respondent was convicted by the court of the two charges.

"13.   During the period from the respondent's arrest on July 2, 2010, while under the agreement with the prosecutor concerning the cocaine charge until her arrest on February 20, 2011, the respondent was demoted to a paralegal in the public defenders' office. The respondent was reinstated in her attorney position when the agreement was reached with the prosecutor regarding the felony charge. Following the February 20, 2011, arrest, she was dismissed.

"14. On March 28, 2013, the court sentenced the respondent to 12 months' incarceration which was suspended to 48 hours in jail followed by 88 days of electronically monitored house arrest. Following the jail time and house arrest, the respondent served 12 months' probation. On April 2, 2014, the court discharged the respondent from probation.

"15. On July 13, 2014, the respondent self-reported the criminal cases to the disciplinary administrator.

"16. The respondent has not used drugs or alcohol since her February 20, 2011, arrest. During that period of time, she has been consistent in attending three to five AA meetings each week and has been a regular AA meeting leader.

"17. The respondent sought the assistance of Anne McDonald, Executive Director of KALAP, and has been under the supervision of KALAP during this period of sobriety. Ms. McDonald testified that the respondent has complied willingly and completely with all KALAP suggestions and is an active successful participant in the program.

"18. Following her last arrest, the respondent underwent an extended period of unemployment. The respondent is currently working as a grocery store clerk with an annual income of approximately $25,000. The customers at the store where she works regularly include lawyers and judges with whom she previously practiced.

*"Conclusions of Law*

"19. Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated Kan. Sup. Ct. R. 203(c)(1) and KRPC 8.4(b), as detailed below. [Footnote: The disciplinary administrator alleged a violation of KRPC 8.4(g). However, based upon the facts alleged in the formal complaint as well as the evidence presented at the hearing, the hearing panel concludes that KRPC 8.4(b) is more specific and is therefore applicable to this case.]

"20. When an attorney is charged with a felony, the Supreme Court rules require the attorney to take certain steps:

'Duty of attorney to report. An attorney who has been charged with a felony crime (as hereinafter defined) or a crime that upon conviction mandates registration by the attorney as an "offender" as defined by K.S.A. 22-4902(a), or with an equivalent offense in any federal court of the United States or the District of Columbia or in any other state, territory, commonwealth, or possession of the United States shall within 14 days inform the Disciplinary Administrator in writing of the charge. The attorney shall inform the Disciplinary Administrator of the disposition of the matter within 14 days of disposition. Notice of appeal does not stay the reporting required under this rule.'

Kan. Sup. Ct. R. 203(c)(1). In this case, the respondent failed to comply with Kan. Sup. Ct. R. 203(c)(1) on four occasions. First, the respondent failed to inform the disciplinary administrator that she had been charged with a felony (possession of cocaine) in 2010 in Kansas City, Missouri, within 14 days. Next, the respondent

failed to inform the disciplinary administrator of the disposition of the possession of cocaine charge within 14 days. Third, the respondent failed to inform the disciplinary administrator that she had been charged with a felony (driving under the influence of alcohol) in 2011 in Johnson County, Kansas. Finally, the respondent failed to inform the disciplinary administrator of the disposition of the felony driving under the influence of alcohol charge within 14 days. The respondent did not make any disclosures required by the rule until July 13, 2014. Accordingly, the hearing panel concludes that the respondent violated KRPC 203(c)(1).

"21. 'It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' KRPC 8.4(b). In this case, the Hearing Panel concludes that the respondent's criminal activity, including her felony conviction for driving under the influence of alcohol, adversely reflects on her fitness as a lawyer in other respects, in violation of KRPC 8.4(b).

### "American Bar Association
### Standards for Imposing Lawyer Sanctions

"22. In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"23. *Duty Violated.* The respondent violated her duty to the public to maintain her personal integrity. Additionally, the respondent violated her duty to the legal profession to comply with court rules.

"24. *Mental State.* The respondent knowingly violated her duty to the public to maintain her personal integrity. The respondent negligently violated her duty to the legal profession to comply with court rules.

"25. *Injury.* As a result of the respondent's misconduct, the respondent caused actual and potential injury to the legal profession.

### "Aggravating and Mitigating Factors

"26. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"27. *Pattern of Misconduct.* The respondent engaged in a pattern of driving under the influence. In 1991, the respondent was arrested for driving under the influence of alcohol in Overland Park, Kansas. The respondent participated in a diversion program. In 2010, the respondent was arrested for driving while under the influence in Missouri. As a result of that arrest, the respondent received a suspended imposition of sentence. Finally, in 2011, the respondent was arrested for driving under the influence of alcohol in Johnson County, Kansas. The respondent was convicted by the court. The 1991 arrest is remote and were it a

single event might be disregarded, however, driving under the influence of alcohol on three occasions is a pattern of misconduct.

"28. *Illegal Conduct, Including that Involving the Use of Controlled Substances.* The respondent engaged in illegal conduct, as evidenced by her felony conviction of driving under the influence of alcohol.

"29. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"30. *Absence of a Prior Disciplinary Record.* The respondent has not previously been disciplined.

"31. *Absence of a Dishonest or Selfish Motive.* The respondent's misconduct was not motivated by dishonesty or selfishness.

"32. *Personal or Emotional Problems if Such Misfortunes Have Contributed to the Violation of the Kansas Rules of Professional Conduct.* The respondent is an alcoholic. Additionally, the respondent has suffered personal loss through several deaths of immediate family members. The respondent's profound loss was clear by observing the respondent during the hearing on the formal complaint. The respondent's personal problems directly contributed to the violation of the rules.

"33. *The Present and Past Attitude of the Attorney as Shown by Her Cooperation During the Hearing and Her Full and Free Acknowledgment of the Transgressions.* The respondent stipulated to the facts alleged in the formal complaint as well as to the rule violations. The respondent fully and freely acknowledged the misconduct.

"34. *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends, and Lawyers in Support of the Character and General Reputation of the Attorney.* The respondent enjoys the respect of her peers in Kansas City, Missouri, as evidenced by several letters offered into evidence by the respondent.

"35. *Mental Disability or Chemical Dependency including Alcoholism or Drug Abuse When: (1) there is Medical Evidence that the Respondent is Affected by a Chemical Dependency or Mental Disability; (2) the Chemical Dependence or Mental Disability Caused the Misconduct; (3) the Respondent's Recovery from the Chemical Dependency or Mental Disability is Demonstrated by a Meaningful and Sustained Period of Successful Rehabilitation; and (4) the Recovery Arrested the Misconduct and Recurrence of that Misconduct is Unlikely.* The respondent has worked hard to recover from alcoholism. In this case, the hearing panel concludes that there is medical evidence that the respondent is affected by chemical dependency, the chemical dependence caused the misconduct, the respondent's recovery from the chemical dependency is demonstrated by a meaningful and sustained period of successful rehabilitation, and the recovery arrested the misconduct and recurrence of that misconduct is unlikely. The hearing panel com-

mends the respondent's commitment to maintaining her sobriety and her hard work to restore her license to practice law.

"36. *Imposition of Other Penalties or Sanctions.* As a result of the respondent's conviction, she served 48 hours in jail and 88 days on house arrest.

"37. *Remorse.* The respondent expressed genuine remorse for engaging in the misconduct.

"38. In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'5.12 Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.

'7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

*"Recommendation*

"39. The disciplinary administrator recommended that the respondent's license to practice law be suspended for a period of 18 months, retroactive to the date of the temporary suspension, August 5, 2014. The disciplinary administrator further recommended that prior to consideration of a petition for reinstatement, the respondent undergo a reinstatement hearing. The respondent recommended that her plan of probation be adopted and that she be allowed to resume the practice of law, subject to the terms and conditions included in her plan of probation.

"40. The hearing panel is mindful of the seriousness of a felony conviction. However, because the respondent timely filed a request for probation and because the Kansas Supreme Court rules do not exclude consideration of probation following a felony conviction, the hearing panel must consider whether probation is appropriate in this case. The hearing panel turns to Kan. Sup. Ct. R. 211(g), which provides, in pertinent part, as follows:

'(1) If the Respondent intends to request that the Respondent be placed on probation for violating the Kansas Rules of Professional Conduct or the Kansas Supreme Court Rules, the Respondent shall provide each member of the Hearing Panel and the Disciplinary Administrator with a workable, substantial, and detailed plan of probation at least fourteen days prior to the hearing on the Formal Complaint. The plan of probation must contain adequate safeguards that will protect the public and ensure the Respondent's full compliance with the disciplinary rules and orders of the Supreme Court.

'(2) If the Respondent provides each member of the Hearing Panel and the Disciplinary Administrator with a plan of probation, the Respondent shall immediately and prior to the hearing on the Formal Complaint put

the plan of probation into effect by complying with each of the terms and conditions of the probation plan.

'(3) The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

(i) the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least fourteen days prior to the hearing on the Formal Complaint;

(ii) the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

(iii) the misconduct can be corrected by probation; and

(iv) placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.'

Thus, in order for the hearing panel to consider recommending to the Supreme Court that the respondent be placed on probation, the hearing panel must first find each of the elements in Kan. Sup. Ct. R. 211(g)(3).

"41. In this case, the respondent developed a workable, substantial, and detailed plan of probation and provided a copy of the proposed plan of probation to the disciplinary administrator and each member of the hearing panel at least 14 days prior to the hearing on the formal complaint. Further, the respondent put the proposed plan of probation into effect prior to the hearing on the formal complaint by complying with each of the terms and conditions of the probation plan. The testimonies of Ms. McDonald of KALAP and Martin J. Dressman, MSW, both support the granting of supervised probation to respondent and there was no contrary evidence offered. With the supervision proposed, it appears that the misconduct can be corrected by probation. Finally, at this time, it appears that it is in the best interest of the legal profession and the citizens of the State of Kansas to recommend probation . . . .

"42. The hearing panel believes that the 18-month retroactive suspension recommended by the disciplinary administrator would not be an effective sanction in this case. By the time a final decision were rendered by the Supreme Court, the 18-month suspension would have been served and the respondent would be immediately eligible for reinstatement without supervision or any remaining sanction. The hearing panel believes that the interests of the bar and public are best served if the respondent's future practice were subject to monitoring and that a significant disciplinary sanction be available if the respondent violates probation.

"43. Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends to the Court that the respondent be suspended for a period of 2 years. However, the hearing panel further recommends to the Court that the imposition of the suspension be

suspended and that the respondent be placed on probation subject to the following terms and conditions:

'a. *Period of Probation.* The respondent will remain on probation for 2 years.

'b. *KALAP Monitoring Agreement.* The respondent will comply with all the terms and conditions of the KALAP monitoring agreement throughout the period of probation. The respondent will attend all self-help meetings, 12-step meetings, support group meetings, and psychotherapy appointments as required in the KALAP monitoring agreement. The respondent will submit to random screens for drugs and alcohol, at her own expense, at the request of her KALAP monitor, the KALAP executive director, or the disciplinary administrator. The respondent will keep her KALAP monitor informed of her treatment plan and the names of any and all treatment providers. The KALAP monitor will provide written quarterly reports to the disciplinary administrator and the executive director of KALAP.

'c. *Releases.* The respondent will execute all necessary releases to allow all treatment providers, the KALAP monitor, the KALAP executive director, any MOLAP monitor, the MOLAP executive director, and the disciplinary administrator to freely exchange information regarding the respondent.

'd. *Psychological Treatment.* The respondent shall continue her treatment with Martin Dressman or other treatment provider approved by the disciplinary administrator, throughout the period of supervised probation, unless the treatment provider determines that continued treatment is no longer necessary. The treatment provider shall notify the KALAP monitor and the disciplinary administrator in the event that the respondent discontinues treatment against the recommendation of the treatment provider during the probationary period.

'e. *Continued Cooperation.* The respondent shall continue to cooperate with the disciplinary administrator. If the disciplinary administrator requests any additional information, the respondent shall timely provide such information.

'f. *Practice Supervision.* Prior to returning to the practice of law, the respondent will propose an attorney to supervise her practice who meets with the approval of the disciplinary administrator. The respondent will develop a plan of practice supervision that meets with the approval of the practice supervisor and the disciplinary administrator. The plan of practice supervision will include appropriate oversight (1) of the respondent's caseload and (2) of the respondent's management of stress relating to the return to the practice of law. The respondent will meet with the practice supervisor on a monthly basis. The respondent will inform the practice supervisor of any events, issues, and problems experienced or expected in the pending

cases. The respondent will allow the practice supervisor access to her client files, computer, calendar, and trust account records. The respondent will comply with any requests made by the practice supervisor. The practice supervisor will provide the disciplinary administrator and the respondent a quarterly report regarding the respondent's status on probation. The practice supervisor will be acting as an officer and an agent of the court while supervising the probation and monitoring the respondent's legal practice. As supervising attorney, the practice supervisor shall be afforded all immunities granted by Kan. Sup. Ct. R. 223 during the course of his supervising activities.

'g. *Additional Violations.* The respondent shall not violate the terms of her probation or the provisions of the Kansas Rules of Professional Conduct. In the event that the respondent violates any of the terms of probation or any of the provisions of the Kansas Rules of Professional Conduct at any time during the probationary period, the respondent shall immediately report such violation to the practice supervisor and the disciplinary administrator. The disciplinary administrator will take appropriate action pursuant to Kan. Sup. Ct. R. 211(g).

'h. *Change of Address.* The respondent will immediately notify the disciplinary administrator, the KALAP monitor, and the executive director of KALAP of any change of address within 14 days.

'i. *Release from Probation.* The respondent will remain on probation until the respondent seeks and obtains a release from probation by the Supreme Court, pursuant to Kan. Sup. Ct. R. 211(g)(7).'

"44. Prior to her appearance before the Kansas Supreme Court for oral argument, the hearing panel directs the respondent to contact the Clerk of the Appellate Courts and the Kansas Continuing Legal Education Commission to determine what she must do in order to correct the administrative deficiencies relating to her law license. The hearing panel recommends that the respondent pay all fees and complete the requisite continuing legal education prior to the oral argument.

"45. Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2014 Kan. Ct. R. Annot. 363). Clear and convincing evi-

dence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *In re Lober,* 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis,* 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint, to which she filed an answer, and adequate notice of the hearing before the panel and the hearing before this court. The respondent did not file exceptions to the hearing panel's final hearing report. As such, the findings of fact are deemed admitted. Supreme Court Rule 212(c) and (d) (2014 Kan. Ct. R. Annot. 383).

The evidence before the hearing panel establishes by clear and convincing evidence the charged misconduct violated Supreme Court Rule 203(c)(1) (2014 Kan. Ct. R. Annot. 306) (automatic temporary suspension of attorneys convicted of a felony crime) and KRPC 8.4(b) (2014 Kan. Ct. R. Annot. 680) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), and it supports the panel's conclusions of law. We adopt the panel's conclusions.

The only remaining issue before us is the appropriate discipline for respondent's violations. The hearing panel unanimously recommended that the respondent be suspended from the practice of law in Kansas for a period of 2 years, the imposition of such suspension to be suspended and respondent placed on probation for a period of 2 years subject to the terms and conditions stated in the final hearing report. At the hearing before this court, at which the respondent appeared, the Disciplinary Administrator recommended that the court follow the panel's recommendation of a suspended 24-month suspension and 24-month probation, provided that respondent be required to apply to the Supreme Court for the termination of her probation.

## CONCLUSION AND DISCIPLINE

Based upon the circumstances of respondent's criminal convictions and her concerted and consistent efforts to address the root cause of her disciplinary problems, the court determines that the recommendations of the hearing panel and the Disciplinary Ad-

ministrator as to the appropriate sanction in this case are appropriate.

IT IS THEREFORE ORDERED that, pursuant to Supreme Court Rule 203(a)(5), Elizabeth Anne Hueben's license to practice law in this state be suspended for a period of 2 years from the effective date of this order.

IT IS FURTHER ORDERED that the above suspension be suspended and that Elizabeth Ann Hueben be placed on supervised probation, subject to those terms and conditions set forth above in the recommendations by the panel, for a period of no less than 2 years from the effective date of this order and until the Supreme Court shall grant respondent's application for termination of probation.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.